UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


HARVEY ZEEK,

        Petitioner,                                Hon. Janet T. Neff

v.                                              Case No. 1:11-CV-1064

MARY BERGHUIS,

        Respondent.
_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Zeek's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Zeek's petition be **denied**.

**BACKGROUND**

As a result of events which occurred between 1999 and 2004, Petitioner was charged with one count of first degree criminal sexual conduct and one count of second degree criminal sexual conduct. (Trial Transcript, July 7, 2009, 11). Several individuals testified at Petitioner's jury trial. The relevant portions of their testimony are summarized below.

1

**A.Z.**

A.Z. is Petitioner's daughter. (Trial Transcript, July 7, 2009, 113-14). A.Z., who was 15 years of age at the time of Petitioner's trial, lived with Petitioner, in Michigan, when she was 6-8 years of age. (Tr. 113-15). A.Z.'s grandparents and her brother, T.Z., also lived with Petitioner. (Tr. 114-15, 132). When "no one was home," Petitioner would sexually assault A.Z. (Tr. 116-20, 130). Specifically, on more than ten different occasions, Petitioner compelled A.Z. to "suck on his penis or rub his penis." (Tr. 116-20, 130). Petitioner also touched A.Z. with "a finger between [her] vagina." (Tr. 116-20, 130).

Petitioner instructed A.Z. not to reveal their activities to others because if she did, he would "go away." (Tr. 121). While A.Z. lived with Petitioner she kept Petitioner's assaultive behavior secret because she "didn't want [Petitioner] to go away." (Tr. 121-22). A.Z. did not, at the time, realize that Petitioner's behavior toward her was wrong. (Tr. 122). When A.Z. was nine years of age she moved to Pittsburgh, Pennsylvania to live with her mother. (Tr. 114, 122). Approximately four years later, A.Z. informed her mother that Petitioner had sexually assaulted her. (Tr. 122). A.Z. subsequently reported Petitioner's activities to individuals at the Child Advocacy Center in Pittsburgh. (Tr. 125-26).

**Linda Zeek**

Linda Zeek is A.Z.'s mother. (Trial Transcript, July 8, 2009, 5-6). After divorcing Petitioner, Zeek joined the military. (Tr. 5-6). While Zeek served on active duty, A.Z. and T.Z. lived with Petitioner. (Tr. 6-7). After Zeek was discharged from active duty service, A.Z. "was very adamant" that she wanted to return to live with her mother. (Tr. 9). A number of years later, after

reading certain court documents concerning Petitioner, A.Z. informed her mother that Petitioner had sexually assaulted her. (Tr. 10-13).

**Rebecca MacArthur**

As of the fall of 2007, MacArthur was employed by the Michigan State Police. (Trial Transcript, July 8, 2009, 19-22). At that time, MacArthur was participating in an investigation that indicated that child pornography was being distributed from Petitioner's residence. (Tr. 22-23). A subsequent search of Petitioner's computer revealed the presence of images of child pornography. (Tr. 23-28).

**Bruce Morningstar**

As of the fall of 2007, Morningstar was employed as a police officer participating on a child pornography task force. (Trial Transcript, July 8, 2009, 32-33). As part of this effort, Morningstar interviewed Petitioner on October 24, 2007. (Tr. 33). Petitioner acknowledged his interest in pornography, including child pornography, and acknowledged that he had "viewed [child pornography] images and exchanged [child pornography] images with other individuals that had the same interest." (Tr. 34, 37). Petitioner also acknowledged that he stored on his computer approximately 50 images of child pornography. (Tr. 37-39). Petitioner estimated that he had traded images of child pornography with others on approximately 140 occasions. (Tr. 40).

**K.P.**

In 2007, K.P. was eleven years old. (Trial Transcript, July 8, 2009, 46). K.P.'s

mother was dating Petitioner and K.P., her mother, and her two younger sisters were living with Petitioner. (Tr. 46-47). On at least one occasion, Petitioner was viewing pornography on his computer and told K.P. that A.Z. "gave him blow jobs and stuff." (Tr. 48-49). Petitioner subsequently requested that K.P. "suck his dick and like give him blow jobs and stuff." (Tr. 49). Petitioner also requested that K.P. pose nude so that he could photograph her. (Tr. 50).

**Melissa Peterson**

Peterson was permitted to testify as an expert in the field of forensic interviewing and counseling. (Trial Transcript, July 8, 2009, 59-62). Peterson testified that it is not uncommon for victims of sexual assault to not immediately (or ever) report their abuse. (Tr. 63). According to Peterson, the younger the sexual assault victim and the closer the victim is to the assailant, the longer, generally, it will take for the victim to report the sexual abuse. (Tr. 63-65).

**Brandon Mahoney**

As of 2008, Mahoney was employed as a detective with the Whitehall Police Department. (Trial Transcript, July 8, 2009, 72). Following A.Z.'s accusations that she had been sexually assaulted by Petitioner, Mahoney interviewed Petitioner. (Tr. 72-74). Petitioner initially declined to speak with Mahoney, but subsequently acknowledged that he was "sexually attracted to juvenile females." (Tr. 74-77).

Following the presentation of evidence, the jury found Petitioner guilty of one count of first degree criminal sexual conduct and one count of second degree criminal sexual conduct. (Trial Transcript, July 8, 2009, 117-18). Petitioner was sentenced to serve concurrent sentences of

18-35 years and 54 months to 18 years. (Sentencing Transcript, August 3, 2009, 7). Petitioner appealed his conviction in the Michigan Court of Appeals, asserting the following claim:

> I. Defendant was denied effective assistance of counsel by ineffective cross-examination that bolstered the prosecutor's case against the Defendant.

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Zeek*, Case No. 294024, Opinion (Mich. Ct. App., Dec. 28, 2010). Petitioner later moved in the Michigan Supreme Court for leave to appeal this determination. The court denied Petitioner's request, stating that "we are not persuaded that the questions presented should be reviewed by this Court." *People v. Zeek*, Case No. 142644, Order (Mich., May 24, 2011). On October 5, 2011, Petitioner initiated the present action in which he asserts the following claim:

> I. Defendant was denied effective assistance of counsel by ineffective cross-examination that bolstered the prosecution's case against the Defendant.

## STANDARD OF REVIEW

Zeek's petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result." *Ayers v. Hudson*, 623 F.3d 301, 307 (6th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at

6

411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case" or if it "either unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Ayers*, 623 F.3d at 307. Furthermore, review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the "factual determination by [the] state courts are presumed correct absent clear and convincing evidence to the contrary." *Ayers*, 623 F.3d at 308. Accordingly, a decision "adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." While this standard is "demanding" it is "not insatiable." *Id.*

For a writ to issue pursuant to § 2254(d)(1), the Court must find a violation of clearly established federal law "as set forth by the Supreme Court at the time the state court rendered its decision." *Stewart v. Irwin*, 503 F.3d 488, 493 (6th Cir. 2007). This definition of "clearly established federal law" includes "only the holdings of the Supreme Court, rather than its dicta." *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). Nevertheless, "the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart*, 503 F.3d at 493.

As previously noted, § 2254(d) provides that habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits" unless the petitioner can satisfy the requirements of either § 2254(d)(1) or § 2254(d)(2). This provision, however, "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). Instead, when a federal claim has been presented to a state court and the state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits." *Id.* at 784-85. Where such is the case, the Court must apply the deferential standard of review articulated above, rather than some other less deferential standard.

The presumption that the state court "adjudicated [a] claim on the merits" may be overcome only "when there is reason to think some other explanation for the state court's decision is more likely." *Id.* If this presumption is overcome, however, the Court reviews the matter de novo. *See Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *see also, Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

**ANALYSIS**

Petitioner asserts a single issue in this matter, namely that he was deprived of the right to the effective assistance of counsel based on the manner in which his trial attorney conducted cross-examination of the prosecution's witnesses. Specifically, Petitioner asserts that his attorney "did not challenge the prosecution's witnesses," but instead questioned them in a manner that

"helped the prosecution."

To establish ineffective assistance of counsel, Petitioner must show both deficient performance by his counsel and prejudice resulting therefrom. *See Premo v. Moore*, 131 S.Ct. 733, 739 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111 (2009)). To establish deficient performance, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Premo*, 131 S.Ct. at 739 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). A court considering a claim of ineffective assistance must apply a "strong presumption that counsel's representation was within the 'wide range' of reasonable professional assistance." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 689). Petitioner's burden is to show that "counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 687).

Petitioner must further establish that he suffered prejudice as a result of his attorney's allegedly deficient performance. Prejudice, in this context, has been defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Premo*, 131 S.Ct. at 739 (quoting *Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010)); *see also*, *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). The issue is whether counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 690). This is a heavy burden for Petitioner to meet, because he must establish that his counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of probable victory." *Jacobs v. Mohr*, 265 F.3d 407, 418 (6th Cir. 2001).

As the Supreme Court has made clear, even when reviewing an ineffective assistance

9

of counsel claim *de novo*, "the standard for judging counsel's representation is a most deferential one." *Premo*, 131 S.Ct. at 740. Likewise, the standard by which petitions for habeas relief are judged is "highly deferential." Thus, when reviewing, in the context of a habeas petition, whether a state court unreasonably applied the *Strickland* standard, review is "doubly" deferential. *Id.* (citations omitted). As the Supreme Court recently concluded:

> The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating reasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (internal citations omitted).

Petitioner faults his trial counsel for eliciting on cross-examination testimony which arguably advanced the prosecution's case rather than his own. The Michigan Court of Appeals rejected Petitioner's claim that his counsel rendered deficient performance, finding instead that counsel employed the reasonable "trial strategy" of "attempt[ing] to create reasonable doubt for the jury by attempting to make the victim's story sound far-fetched and fabricated." *People v. Zeek*, Case No. 294024, Opinion at 2 (Mich. Ct. App., Dec. 28, 2010). This particular strategy has been applied with great success as students of trial history are aware. *See, e.g., The Triangle Shirtwaist Factory Fire*, available at http://law2.umkc.edu/faculty/projects/ftrials/triangle/triangleaccount.html (last visited on July 17, 2013) (describing how defense counsel successfully discredited an important prosecution witness by eliciting on cross-examination a re-telling of the account the witness provided on direct examination); Harold Lee Schwab, *Cross-Examination of the Infant Witness: A Review of Lessons Learned from the Triangle Shirt Waist Fire Case and Related Trial Experiences*, NYSBA

10

Trial Lawyers Section Digest, Fall 2006 at 3-9 (describing how counsel employed an identical strategy to discredit a child witness).

As is well recognized, an attorney's strategic decisions are "virtually unchallengeable." *See United States v. Washington*, 715 F.3d 975, 982 (6th Cir. 2013) (quoting *Strickland*, 466 U.S. at 690-91). Given the overwhelming evidence of Petitioner's guilt, and the complete absence of evidence advancing Petitioner's cause or otherwise diminishing the State's case, counsel's strategy was not unreasonable.

Moreover, even if the Court assumes that counsel's cross-examination method constituted deficient performance, Petitioner cannot establish that he was prejudiced by such as the evidence against him was overwhelming. Also, as the Michigan Court of Appeals accurately observed, "[t]he cross-examination [a]bout which defendant complains was largely counsel's elicitation of testimony previously stated by the prosecution's witnesses on direct examination." *People v. Zeek*, Case No. 294024, Opinion at 2 (Mich. Ct. App., Dec. 28, 2010). As the court further observed, "[e]ven if counsel had not obtained this testimony during cross-examination, it was already in evidence." *Id.* Petitioner presented no evidence at trial and fails to offer in this proceeding any suggestion that there existed any evidence, or method of cross-examination, that would have advanced his cause or diminished the strength of the prosecution's case. Simply put, Petitioner cannot establish that but for his counsel's alleged shortcoming there exists any reasonable probability that the result of his trial would have been different.

The Michigan Court of Appeals rejected Petitioner's ineffective assistance of counsel claim. This determination was neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, the court's decision was not based on an unreasonable

determination of the facts in light of the evidence presented. Accordingly, the undersigned recommends that this claim be denied.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States. Accordingly, the undersigned recommends that Zeek's petition for writ of habeas corpus be **denied**. The undersigned further recommends that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: July 29, 2013        /s/ Ellen S. Carmody
                           ELLEN S. CARMODY
                           United States Magistrate Judge